# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 1:08-CR-00462 |
| v. | : |
| MARLON HOLMES | : Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendant Marlon Holmes's motion for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). (Docs. 106, 108.) Holmes asks the court to immediately reduce his sentence to time served with supervised release in light of his health issues and concerns regarding transmission of the COVID-19 virus in an institutional setting. The Government opposes Holmes's request. For the reasons that follow, Holmes's motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A federal grand jury returned a three-count indictment in this court on December 17, 2008, charging Holmes with distribution of 50 grams and more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 1); conspiracy to distribute 50 grams and more of cocaine base in violation of 21 U.S.C. § 846 (Count 2); and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count 3). (Doc. 1.) On November 2, 2011, Holmes was

arrested on the outstanding warrant in this case. (Doc. 8.) Holmes subsequently entered a guilty plea to a superseding information which charged him with distribution of cocaine base and cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. 39.) The plea agreement bound the court to sentence Holmes to a term of imprisonment between 96 and 144 months. (Doc. 67, p. 3.)[1]

At sentencing, the court found that Holmes was a career offender based on two prior convictions, drug trafficking and simple assault, resulting in a guideline range of 151 to 188 months. (PSR ¶¶ 28, 32, 64.) In balancing the factors set forth in 18 U.S.C. § 3553(a), Judge William W. Caldwell[2] stated:

> What concerns me about this case is the fact that I think, if I'm counting correctly, on four of these occasions, there was a pistol, a gun used. And on two of them, or at least one of them, the gun was fired. And so I think Mr. Holmes's proclivity to be armed is a concern. And I have to look at his past record to see whether I think he's going to get into trouble after he gets out of serving this sentence that I will impose.
>
> Starting at age 17, as we've talked about, he got a one-and-a-half to five-year sentence. He was paroled in October of '95, I believe it was. And it was in August of '96 that he gets involved in a thing that resulted in being charged with receiving stolen property. But there was a stolen pistol, the pistol was fired. And then in 2000, he had a gun charge for which he got one to two years. He fled from the police and he failed to surrender to them.

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] The late Judge Caldwell presided over Holmes's case until the filing of the instant motion before the court. This case was then reassigned to the undersigned.

> And then we have the current charges in '08 – well, there was a charge, corruption of minors, in '05. But then in '08, the charges to which he pled guilty involving a gun again and two drug transactions, I believe.
>
> I believe there is some hope for Mr. Holmes. I know I'm taking you at your word, Mr. Holmes, that you are going to turn your life around during the period of incarceration. I take no pleasure in sentencing anybody. But I think in this case, a sentence toward the high end of the range is more fair than one at the bottom; that is, fair to the interests of the community. I'm concerned about recidivism, of course, but I hope that's not going to happen. And considering the past record, this is a very serious case.

(Doc. 82, pp. 10–11.) The court ultimately sentenced Holmes to a term of imprisonment of 132 months. (Doc. 77.) Holmes has served approximately 103 months of his sentence, with a projected release date of March 17, 2021, and is scheduled to be released to the Capital Pavilion, a halfway house, on September 22, 2020. (Doc. 108, p. 2; Doc. 108-2, p. 3.)

On April 25, 2020, Holmes requested compassionate release and a reduction of his sentence through the warden at FCI Schuylkill based on his medical condition and the COVID-19 pandemic. (Doc. 108-3, pp. 1–2.) While awaiting a response from the warden, on April 28, 2020, Holmes filed the instant motion to appoint counsel and for release from custody. (Doc. 106.) Acknowledging that only the Bureau of Prisons ("BOP") has authority to release an inmate to home confinement, *see* 18 U.S.C. § 3624(c)(2), the court construed the motion as a request for sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A) and appointed the Federal Public Defender to determine whether

Holmes may be eligible for such relief and, if so, to file an appropriate supplemental motion on his behalf. (Doc. 107.) A counseled brief in support of Holmes's motion was filed on June 2, 2020, arguing that the combination of COVID-19 and Holmes's health created extraordinary and compelling reasons for a reduction in his sentence. (Doc. 108.)

On May 13, 2020, the warden denied Holmes's request for home confinement concluding as follows:

> After a complete review of your circumstances based upon the Attorney General's criteria, we have determined you are not eligible for home confinement. Specifically, your recidivism score of "High" disqualifies you from consideration. In view of the fact FCI Schuylkill does not have any confirmed staff or inmate cases of COVID-19 at the present time, the conditions of your release present a significantly higher risk of contracting COVID-19 than your current confinement at FCI Schuylkill.

(Doc. 108-4.) Holmes subsequently asked the warden to reconsider his decision. (Doc. 108-5.) At this time, the court does not know the outcome of Holmes's reconsideration request.[3]

## DISCUSSION

Holmes asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b).

---

[3] The Government states that Holmes's reconsideration request was denied citing to Doc. 108-6. However, after a thorough review of that exhibit, the court cannot conclude that the warden has rendered a decision.

Only after a defendant has fully exhausted all administrative rights to appeal from the BOP's failure to file a motion or the lapse of thirty days from the warden's receipt of a defendant's request, whichever is earlier, may the court reduce a defendant's sentence pursuant to this provision. 18 U.S.C. §3582(c)(1)(A). Here, Holmes submitted his request to the warden of FCI Schuylkill on April 25, 2020, and the warden has since denied his request. (Docs. 108-3, 108-4.) The Government does not contest that Holmes has exhausted the administrate remedies available to him or that Holmes's motion is properly before this court. Thus, the court finds that Holmes's motion is properly before this court and will turn to the merits of his request for a reduction of his sentence.

The sentencing court can reduce a term of imprisonment if the court finds that "extraordinary and compelling reasons warrant such a reduction," the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and the sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. The Sentencing Commission was given the authority by Congress to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). There are four circumstances described that satisfy the "extraordinary and compelling reasons" standard: (A) the defendant's medical condition; (B) the age of the defendant; (C) family circumstances; or (D)

"an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n.1. In this case, Holmes contends that he qualifies for a sentence reduction under the catchall section because of his medical condition in conjunction with the COVID-19 pandemic. (Doc. 108, p. 9.)

The court observes that the CDC has advised that people over the age of 65, those living in nursing homes or long-term care facilities, and people of any age with underlying medical conditions including those with chronic kidney disease undergoing dialysis are at a higher risk of severe illness or death from COVID-19.[4] *See Coronavirus Disease 2019 (COVID-19): People Who Are At Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 9, 2020). The court also observes that in response to the COVID-19 pandemic, the BOP continues to carefully monitor the virus to assess how to best ensure the safety of staff, inmates, and the public. *See A BOP COVID-19 Overview*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ overview.jsp#bop_emergency_response (last visited June 9, 2020). Furthermore, the BOP has instituted a modified operations

---

[4] Because the court is writing for the benefit of the parties, it will not delve into the details of the COVID-19 pandemic, which are well known to the court and the parties.

plan to minimize the risk of COVID-19 transmission, and continues to update that plan as needed. *See BOP Implementing Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (June 9, 2020).

The parties do not dispute Holmes's medical conditions. He suffers from lower urinary tract issues and an acute kidney injury. (Doc. 108-1, pp. 1–3.) On February 25, 2020, Holmes had surgery at Hershey Medical Center where a cystoscopy and prostatic urethral lift were performed, as well as the insertion of a foley catheter. (*Id.* at 3–5.) Shortly thereafter, on February 29, 2020, Holmes was seen at Lehigh Valley Hospital for an acute kidney injury. (*Id.* at 1–3.) Other than a follow-up visit performed at FCI Schuylkill on March 2, 2020, Holmes has not reported any adverse symptoms or issues. (*See* Gov't Ex. A to Doc. 110, p. 14.) Holmes is not currently receiving dialysis but is taking Acetaminophen (Tylenol), Alfuzosin, Finasteride, and Naproxen (Aleve). (*Id.* at 21.)

Holmes argues that the risk of contracting COVID-19 in a BOP facility is much higher than if he was able to quarantine at home and practice social distancing. (Doc. 108, p. 10.) Recognizing that FCI Schuylkill does not have any confirmed cases of COVID-19, Holmes contends that the number of positive cases reported by the BOP is far from accurate due to the limited testing available at the BOP facilities. (*Id.*) Thus, as a result of his pre-existing medical conditions,

Holmes states that the CDC would classify him as high-risk of severe illness or death if exposed to COVID-19. (*Id.* at 11.)

The Government contends that Holmes's medical condition, although chronic, is manageable and does not fall within one of the categories of medical conditions listed in the Sentencing Commission's policy statement. (Doc. 110, pp. 21–22.) Specifically, Holmes does not have a terminal illness or a "serious physical or medical condition . . . that substantially diminishes the ability of [Holmes] to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover." (*Id.* (quoting U.S.S.G. § 1B1.13 cmt. n.1).) The Government further argues that the existence of the COVID-19 pandemic does not, by itself, fall into one of the categories set forth by the Sentencing Commission. (*Id.* at 22.) However, the Government recognizes that COVID-19 is relevant to the court's analysis when an inmate's chronic medical condition, as identified by the CDC, elevates the inmate's risk of becoming seriously ill from COVID-19. (*Id.* at 24.) In this instance, the Government avers that although Holmes underwent surgery in late February and was treated for post-operative issues in early March, he appears to have "rebounded." (*Id.* at 25.) Furthermore, the Government points out that Holmes seeks to be released to Dauphin County, which had numerous cases of COVID-19, and was only recently

moved from the "red" to "yellow" phase of Pennsylvania's reopening plan by the Governor of Pennsylvania. (*Id.* at 26.)

Based on the medical records provided, the court finds that Holmes's medical condition is chronic. However, the court also finds that following his surgery, post-operative complication, and follow up visit, it appears that Holmes's medical condition is under control. Since his follow up visit at FCI Schuylkill on March 2, 2020, Holmes's has not sought additional medical care, nor is he receiving dialysis. (*See* Gov't Ex. A to Doc. 110.) Furthermore, FCI Schuylkill has not reported any cases of COVID-19, which is in stark contract to Dauphin County reporting 1,525 cases as of June 9, 2020. *See COVID-19 Data for Pennsylvania*, DEPARTMENT OF HEALTH, https://www.health.pa.gov/topics/disease/ coronavirus/Pages/Cases.aspx (last visited June 9, 2020). Accordingly, the court cannot find that the combination of Holmes's medical condition and the COVID-19 pandemic create an extraordinary and compelling reason to reduce Holmes's sentence to time served.

But even if the court concluded that Holmes presented an extraordinary and compelling reason to reduce his sentence, the court would be reluctant to reduce his sentence based on a review of the Section 3553(a) factors. Like Judge Caldwell at sentencing, the court is concerned about Holmes's substantial criminal history, especially the involvement of firearms. From the records provided, the

court is optimistic and hopeful that Holmes has been rehabilitated and will not recidivate.  However, releasing Holmes to home confinement directly, without the benefit of a step-down period at a community correctional facility, concerns this court.  The court believes that Holmes's current plan to be released to Capital Pavilion, a half-way house, on September 22, 2020, provides him with the greatest likelihood of success upon release.

## Conclusion

For the reasons stated, Holmes's motion for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) will be denied.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 10, 2020